UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                                  )
**GILBERT P. HYATT,**                            )
                                                                  )
    **Plaintiff,**                                   )
                                                                  )
       v.                                              )       Civil Action No. 03-901 (RCL)
                                                                  )
**MICHELLE K. LEE,**                            )       **FILED UNDER SEAL**
                                                                  )
    Under Secretary of Commerce      )
    for Intellectual Property and             )
    Director of the United States             )
    Patent and Trademark Office,         )
                                                                  )
    **Defendant.**                                 )
                                                                  )
_____)


**MEMORANDUM OPINION**

**I.     INTRODUCTION**

Before the Court is defendant's motion to dismiss the case. Defendant argues plaintiff's delays in both federal courts and before the United States Patent and Trademark Office (USPTO) justify dismissal on one or both of the following grounds: first, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute and second, for prosecution laches. For the following reasons the motion to dismiss will be granted.

**II.    BACKGROUND**

In June 1995, Mr. Hyatt filed Patent Application No. 08/471,702 ("the '702 application"), "Improved Memory Architecture Having A Multiple Buffer Output Arrangement." The '702 application is in part a continuation of other applications dating back to the 1980s. In 1997, after

1

multiple amendments, the patent examiner rejected the '702 application. Mr. Hyatt appealed this decision to the Patent Trial and Appeal Board[1] in 1998. The Board rejected many of Mr. Hyatt's claims and in 2003 he filed an action against the director of the USPTO pursuant to 35 U.S.C. § 145.

This court granted the USPTO's motion for summary judgment while declining to review evidence Mr. Hyatt had not previously presented to the USPTO. The question of considering new evidence was appealed to the Federal Circuit, reheard *en banc*, and ultimately appealed to the Supreme Court. In 2012, the Supreme Court held that the district court abused its discretion by excluding Mr. Hyatt's new evidence and remanded the case to the Federal Circuit. *Hyatt v. Dudas*, No. 03-0901, 2005 WL 5569663 (D.D.C. Sept. 30, 2005), *aff'd sub nom.*, *Hyatt v. Doll*, 576 F.3d 1246 (Fed. Cir. 2009), *rev'd en banc sub nom.*, *Hyatt v. Kappos*, 625 F.3d 1320 (Fed. Cir. 2010), *aff'd and remanded,* 132 S. Ct. 1690 (2012).

For the next three years there was no action in the case. In 2015, plaintiff filed an unopposed motion in the Federal Circuit to remand to the district court, noting the "docket sheet reflects no activity in this case after May 21, 2012." Appellant's Unopposed Mot. Remand *Hyatt v. Kappos*, 625 F.3d 1320 (Fed. Cir. 2010) (No. 2007-1066), ECF No. 3. Shortly after the case was remanded to this Court, defendant filed the present motion to dismiss.

### III.    LEGAL STANDARDS

Defendant identifies two bases for the motion to dismiss, Rule 41(b) of the Federal Rules of Civil Procedure and prosecution laches. The legal standards for these doctrines are addressed below.

---

[1] This was previously referred to as the Board of Patent Appeals and Interferences, but is now referred to as the Patent Trial and Appeal Board pursuant to the Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 3(j)(1), 125 Stat. 284, 290 (2011).

### A. FEDERAL RULE OF CIVIL PROCEDURE 41(B)

D.C. Circuit law regarding Rule 41(b) is applicable in this case. *Bd. of Tr.s of Leland Stanford Junior Univ. v. Motorola, Inc.*, 314 F. App'x 284, 287 (Fed. Cir. 2008) ("A dismissal under Federal Rule of Civil Procedure 41(b) is a procedural issue not unique to patent law, which we review under regional circuit law." (citing *Mitutoyo Corp. v. Cent. Purchasing, LLC*, 499 F.3d 1284, 1290 (Fed. Cir. 2007); *Bowling v. Hasbro, Inc.*, 403 F.3d 1373, 1375 (Fed. Cir. 2005))).

The D.C. Circuit has articulated three justifications for dismissal under 41(b): (1) prejudice to the other party; (2) failure of alternative sanctions to mitigate the severe burden that the misconduct has placed on the judicial system; and (3) deterrence of future misconduct. *Gardner v. United States*, 211 F.3d 1305, 1309 (D.C. Cir. 2000). Dismissal under Rule 41(b) is a "harsh sanction" that must be "necessary under the circumstances of th[e] case." *English–Speaking Union v. Johnson*, 353 F.3d 1013, 1016 (D.C. Cir. 2004). It is "ordinarily limited to cases involving egregious conduct by particularly dilatory plaintiffs, after 'less dire alternatives' have been tried without success." *Noble v. U.S. Postal Serv.*, 71 F. App'x. 69, 69 (D.C. Cir. 2003) (quoting *Trakas v. Quality Brands, Inc.*, 759 F.2d 185, 187 (D.C. Cir. 1985)).

Despite the severity of the sanction, dismissal under Rule 41(b) is proper "if a litigant has not manifested reasonable diligence in pursuing the case." *Bomate v. Ford Motor Co.*, 761 F.2d 713, 714 (D.C. Cir. 1985). This includes lengthy periods of inactivity. *See Smith-Bey v. Cripe*, 852 F.2d 592, 594 (D.C. Cir. 1988) ("A lengthy period of inactivity may also be enough to justify dismissal under Rule 41(b).").

In making a determination under Rule 41(b), this Court is not limited to the events that have transpired before this particular Court. *See, e.g.*, *Ames v. Standard Oil Co. (Ind.)*, 108 F.R.D.

299, 300 (D.D.C. 1985) ("Such neglect includes not only failure to pursue the litigation in the district court but also any failure to prosecute in an 'alternative forum' such as an agency or arbitration proceeding."). This is all the more true given Rule 41(b)'s roots in equity, *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630 (1962), where a court's powers tend to be broader. *See generally, Willard v. Tayloe*, 75 U.S. 557 (1869).

### B. PROSECUTION LACHES

Prosecution laches is an equitable doctrine that can hold patents unenforceable when an applicant delays in prosecuting a patent. *See Woodbridge v. United States*, 263 U.S. 50, 56 (1923) ("It is a case of forfeiting the right to a patent by designed delay."). In finding prosecution laches, the courts look to "the totality of the circumstances, including the prosecution history of all of a series of related patents and overall delay in issuing claims." *Symbol Techs., Inc. v. Lemelson Med.*, 422 F.3d 1378, 1386 (Fed. Cir. 2002).

The applicant need not have violated any pertinent rule or statute in prosecuting the patent. *See id.* Indeed, the doctrine of prosecution laches may explicitly look to the abuse of statutory provisions, though all applicable rules have been followed. *Id.* at 1381. The Federal Circuit recently laid out the elements that underlie a prosecution laches defense: (1) unreasonable and inexcusable delay, (2) prejudice attributable to the delay, and (3) evidence of intervening rights. *Cancer Research Tech. Ltd. v. Barr Labs., Inc.*, 625 F.3d 724, 729 (Fed. Cir. 2010).

### IV.    DISCUSSION

#### A.  FAILURE TO PROSECUTE

This case was sitting at the Federal Circuit from Mid-2012 to Mid-2015, nearly three years. Three years is a long time.

> *1. Plaintiff's Arguments Concerning Failure to Prosecute During this Time Period.*

In explaining this time, plaintiff makes several arguments: (1) that he broke no rules, (2) that the parties agreed on a staggered schedule to litigate several other cases, (3) that the government waived the failure to prosecute argument through their knowledge and by consenting to remand from the Federal Circuit, and (4) that the plaintiff was very busy with related litigation. These arguments will be addressed in turn.

(1) As an initial matter, following all applicable rules does not preclude dismissal under Rule 41(b). The rule reads, in pertinent part, "[i]f the plaintiff fails to prosecute *or* to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b) (emphasis added). The use of the word "or" makes it clear that one may fail to prosecute without violating any rules or orders. As noted above, the D.C. Circuit has articulated standards for dismissal under Rule 41(b) and does not require a party to have violated any rules. *See e.g.*, *Shea v. Donohoe Const. Co.*, 795 F.2d 1071, 1074 (D.C. Cir. 1986).

Plaintiff also states that ordinarily the Federal Circuit would have taken further action after the case was remanded. Pl.'s Mem. Law Opp'n Mot. Dismiss 12, ECF No. 82. While plaintiff cites cases showing the Federal Circuit has in at least some instances issued orders *sua sponte* after remand, *id.*, neither party has offered any evidence of what was expected in this case. Regardless of any party's expectation, however, it should quickly have been apparent the Federal Circuit did not remand this case to the district court *sua sponte*. Just as the Federal Circuit has explained that "a delay by the PTO cannot excuse the appellant's own delay," *In re Bogese*, 303 F.3d 1362, 1369 (Fed. Cir. 2002), the Court finds that even if the plaintiff initially expected the Federal Circuit to act, his own inaction for a three year period is not excused by the Federal Circuit's inaction.

(2) There was no agreement between the parties or with the court to delay the remand in this case for three years. The plaintiff argues that there was an agreement to stagger several other cases. Pl.'s Mem. Law Opp'n Mot. Dismiss 8. Plaintiff appears to argue not that there was agreement in this case, but that the agreement to delay other cases implied delay was acceptable in this case. *Id.* at 2. The Court is certainly unaware of any explicit agreement in this case, and defendant states none existed. Def.'s Reply Mem. 9, ECF No. 84 ("There simply was no agreement . . . to delay these proceedings"). The question is thus what is the relevance of the agreement to stage other cases. To the extent it is relevant at all, it may be through *expressio unius est exclusio alterius*. *See* Norman J. Singer & Shambie Singer, Sutherland Statutes and Statutory Construction § 47:23 (7th ed.). While admittedly not engaged in textual interpretation, the Court is all the more convinced there was no agreement—implicit or explicit—to delay this case in light of the fact that the parties did agree to stage other cases. Without any evidence to the contrary, the Court believes the omission of this case from any agreed staging could not reasonably be understood as implying the defendant consented to delay. *See United States v. Vonn*, 535 U.S. 55, 65 (2002).

(3) There is nothing to suggest defendant waived his argument for failure to prosecute. Plaintiff argues that by consenting to remand, the defendant waived any objections to the delay. Pl.'s Mem. Law Opp'n Mot. Dismiss 12. More specifically, he argues that the defendant was "obligated to raise any . . . objection in the Court where the delay supposedly occurred." *Id*. This argument is at odds with some of the primary reasons for the doctrine of waiver. *Puckett v. United States*, 566 U.S. 129, 134 (2009) (explaining with regards to waiver that district courts are "ordinarily in the best position to determine the relevant facts" and that it prevents 'sandbagging').

Additionally, it is without support, as defendant notes in their brief.  Def.'s Reply Mem. 9 (arguing the sole treatise cited by plaintiff is inapposite).

(4) The extensive work required to litigate other cases or pursue other patents does not excuse delay.  Plaintiff explains that during this time period he litigated other cases and filed thousands of pages of materials with the PTO.  Pl.'s Mem. Law Opp'n Mot. Dismiss 13.  The Court does not doubt that litigation is time and resource consuming, nor does it doubt there is a storied history to each of those cases.  At issue however, is this case, which was left to languish for three years.  The plaintiff has clearly demonstrated the ability to consider time constraints and other limitations given the parties' agreement to stagger other cases.  The plaintiff claiming work done in other cases should count here is like a student claiming they should be excused for failing to do their English homework because they did their math homework.  While there may be instances where inaction for three years is acceptable, this is not one of them.

### 2. *Impact of the Three Year Delay*

The Court concludes three years of inactivity would be sufficient to dismiss in and of itself. *See Capital Yacht Club v. Vessel Aviva*, 646 F. Supp. 2d 156, 156 (D.D.C. 2009) (dismissing in part for failure to prosecute after two years of inactivity); *Williams v. D.C. Water Auth.*, No. 01-2110, 2005 WL 1241129, at *3 (D.D.C. May 24, 2005) ("although there may not be a magic number reflecting the period of time that a defendant should be made to wait, the three and one-half year period that has passed . . . is certainly long enough"); *Stella v. Mineta*, 231 F.R.D. 44, 48 (D.D.C. 2005) (dismissing after "noncompliance with the court's rules and orders . . . consumed over two years of the court's time").  This is particularly true given the sharp contrast between the explanations proffered by the plaintiff and those provided in cases where dismissal was improper. In those instances the plaintiff regularly has a reasonable excuse for the delay.  *See, e.g.*, *Angellino*

*v. Royal Family Al-Saud*, 688 F.3d 771, 777 (D.C. Cir. 2012) (explaining the plaintiff attempted to serve process within two weeks of filing his complaint and, when twice ordered to show cause why his complaint should not be dismissed for failure to serve process, he promptly responded by explaining to the court why he believed he had done so).

The three years do not exist in isolation however. They exist in the context of the patent system, and more particularly in light of the fact this patent application was filed just days before changes from the Uruguay round of the General Agreement on Tariffs and Trade ("GATT") went into effect. This means if a patent were to issue, its duration would be from the time of issuance, not the time of filing. Pub. L. No. 103–465, § 531-32, 108 Stat. 4809 (1994). In discussing the patent system, the Supreme Court has explained,

> Congress relies for the public benefit to be derived from the invention during the monopoly on the natural motive for gain in the patentee to exploit his invention and to make, use, and vend it or its product or to permit others to do so, for profit. The importance in working out the purpose of Congress of keeping the inventor's monopoly within the term for which the patent is granted is thus shown to be capital. Any practice by the inventor and applicant for a patent through which he deliberately and without excuse postpones beyond the date of the actual invention, the beginning of the term of his monopoly, and thus puts off the free public enjoyment of the useful invention, is an evasion of the statute and defeats its benevolent aim.

*Woodbridge v. United States*, 263 U.S. 50, 55-56 (1923); *see also Webster Elec. Co. v. Splitdorf Elec. Co.*, 264 U.S. 463, 466 (1924) ("it is no less important that the law shall not be so loosely construed and enforced as to subvert its limitations, and bring about an undue extension of the patent monopoly against private and public rights."). While it is true that the Supreme Court was speaking in the context of prosecution laches, the Court made clear that both the inventor and the public have rights that must be balanced. *See also Symbol Techs., Inc. v. Lemelson Med., Educ. & Research Found.*, 422 F.3d at 1386 (discussing "prejudice to the public").

In looking at "all pertinent circumstances," *Cherry v. Brown-Frazier-Whitney*, 548 F.2d 965, 969 (D.C. Cir. 1976), the Court feels compelled to recognize this Supreme Court and Federal Circuit language regarding the patent system. Without impugning any motives, the Court must recognize that the three years the case sat at the Federal Circuit on remand came at a direct cost to those "private and public rights," as each day it sat is another day the patent, if issued, would be withheld from others. This is something the plaintiff was well aware of. The Court notes that defendants raised the issue of delay in their 2003 motion for summary judgment. Def.'s Mot. Summ. J. 2-6, ECF 23-1 (discussing "submarine patents"). Without opining on the validity of that argument, plaintiff was aware not only of how the patent system worked, but the implication of each additional period of delay. It is in this context the Court finds the delay to be particularly egregious.

It may take a good deal of time for issues to be fully litigated, particularly complicated issues such as those found in this case that are subject to appeals and remands. In those cases, delay on the issuance of a patent is incidental—the case is in the courts to litigate one or more disputed issues. It is unacceptable, however, for the Court to be used not as a forum for litigation but a tool in manipulating patent issuance dates. It would be one thing if there was an agreement not only between the parties, but also with the Court. As noted above however, that was not the case. Instead for three years the court was used as a tool to "evade" the "benevolent aim" of the patent system. *Woodbridge*, 263 U.S. at 56. Accordingly, plaintiff's inaction is something that the Court wishes to deter.

The inaction is also prejudicial to the defendant. Prejudice may be presumed here due to the unreasonableness of the three-year delay. *Shea v. Donohoe Const. Co.*, 795 F.2d at 1075 ("[p]rejudice to defendants resulting from unreasonable delay may be presumed" (citing *Lyell*

*Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 43 (2d Cir. 1982))); *see* Wright & Miller, 9 Fed. Prac. & Proc. § 2370 (3d ed.); *see also Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962). In this case there is prejudice not only to the public generally, from whom the plaintiff's inaction took three additional years of freely using the technology, but also to any companies in related industries who may have unknowingly incorporated the plaintiff's patent. Further still, the defendant is also prejudiced as they have credibly explained that as time goes on it becomes more difficult to find individuals with subject matter expertise from the time period in question, the 1970s and '80s. *See* Def.'s Mot. Dismiss 13, ECF No. 77.

The Court does not make decisions under Rule 41(b) lightly. However, the Court is unaware of any less severe alternative sanctions that would be appropriate in this situation.

### B.  PROSECUTION LACHES

Both plaintiff and defendant make numerous legal arguments about prosecution laches and factual arguments about the history of this particular patent prosecution. While the Court feels that dismissal under Rule 41(b) can and should take into account all the circumstances, including inaction in light of this being a pre-GATT patent case, it does not feel it is necessary to reach the issue of prosecution laches as a separate and independent basis for dismissal or examine the history of this patent in front of the USPTO. As noted previously, this would involve analyzing the "totality of the circumstances, including the prosecution history of all of a series of related patents and overall delay in issuing claims." *Symbol Techs., Inc. v. Lemelson Med., Educ. & Research Found.*, 422 F.3d at 1386. This includes not only the 30-plus year history of this case, but of multiple cases across both decades and jurisdictions. Such a sweeping inquiry is not required in this case, as the Court finds there was a failure to prosecute.

## V.   CONCLUSION

For the reasons stated herein, defendant's motion to dismiss will be granted under Rule 41(b) of the Federal Rules of Civil Procedure in a separate order issued this date.

Signed this 6th day of June, 2016.

*Royce C. Lamberth*
ROYCE C. LAMBERTH
United States District Judge